Citation Nr: 1536791 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 96-11 042 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD). 

2. Entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU).


REPRESENTATION

Veteran represented by: Eric A. Gang, Attorney


WITNESS AT HEARING ON APPEAL

Veteran 



ATTORNEY FOR THE BOARD

S. Walker, Counsel 


INTRODUCTION

The Veteran had active service from October 1973 to December 1976, and from November 1990 to May 1991. 

This matter came before the Board from various rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in North Little Rock, Arkansas.

In an October 2006 decision, the Board, in relevant part, determined that new and material evidence had not been submitted to reopen claims of entitlement to service connection for a depressive disorder. The Board also remanded the issues of entitlement to service connection for PTSD (as this issue was developed separately from the issue of entitlement to service connection for a depressive disorder) and entitlement to TDIU. 

In a September 2008 Memorandum Decision, the U.S. Court of Appeals for Veterans Claims (Court), inter alia, vacated and remanded the issue of entitlement to service connection for depressive disorder. Pursuant to the Memorandum Decision, the Board remanded that issue in June 2010 for additional development consistent with the Court's order. The Board remanded this matter for additional development in March 2012 and January 2013. 

The Board observes that the Veteran was afforded a hearing before a Veterans Law Judge in April 2006. In March 2010, he was advised that the Judge that conducted his hearing was no longer employed by the Board and that he could opt for an additional hearing. He responded in March 2010 that he did not wish to have another hearing.

Most recently, the Board remanded the issues of entitlement to service connection for an acquired psychiatric disorder and entitlement to TDIU in September 2014. As the requested development has been completed, the issues are properly before the Board for adjudication.

Finally, as the issues of entitlement to service connection for an acquired psychiatric disorder, to exclude PTSD, as well as entitlement to service connection for PTSD, are both before the Board at this time, the Board has recharacterized these issues as entitlement to service connection for an acquired psychiatric disorder, to include PTSD.


FINDINGS OF FACT

1. An acquired psychiatric disorder was not manifest in service; a psychosis was not manifested within one year after the Veteran's separation from service; his personality disorder (of itself) is not a compensable disability; and no chronic acquired psychiatric disability is shown to be related to his service.

2. The Veteran is currently service-connected for four disabilities: sinusitis evaluated as 10 percent disabling; and bilateral tinea pedis, a left knee cystic mass, and left ear hearing loss, all non-compensably rated. His combined evaluation is 10 percent. 

3. The most probative evidence demonstrates that the Veteran's service-connected disabilities do not preclude him from securing and following substantially gainful employment.


CONCLUSIONS OF LAW

1. An acquired psychiatric disorder was not incurred in or aggravated by active service. 38 U.S.C.A. §§ 1101, 1110, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2015).

2. The criteria for entitlement to a TDIU rating are not met. 38 U.S.C.A. §§ 1155, 5103, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 3.340, 3.341, 4.16, 4.25 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Before addressing the merits of the issue, the Board notes that VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §§ 3.159, 3.326(a).

Neither the Veteran nor his representative has alleged prejudice with respect to notice, as is required. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009); Goodwin v. Peake, 22 Vet. App. 128 (2008); Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). None is found by the Board. Indeed, VA's duty to notify has been more than satisfied. The Veteran was notified on multiple occasions of the criteria for establishing entitlement to service connection and TDIU, the evidence required in this regard, and his and VA's respective duties for obtaining evidence. 

As for the duty to assist, the Veteran's service treatment records have been obtained. Pertinent post-service medical records have been obtained, to the extent available. As such, the Board finds that no additional evidence, which may aid the Veteran's claim or might be pertinent to the bases of the claim, has been submitted, identified or remains outstanding, and the duty to assist requirement has been satisfied. 
 
The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. See Green v. Derwinski, 1 Vet. App. 121 (1991). Most recently, as directed by the September 2014 Board remand, a VA examination was provided in October 2014, with addendum opinions provided in January and March 2015, so as to ascertain whether any currently-diagnosed psychiatric disorder, to include PTSD, was related to his period of active service.

To that end, when VA undertakes to provide an opinion, it must ensure that the opinion is adequate. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Here, the VA opinion is adequate, as the examiner included a thorough review of the file and provided findings relevant to the issue at hand. The Veteran's complaints and lay history were also considered and discussed. Rationale was provided with the opinion. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA opinion with respect to this issue has been met. See 38 C.F.R. § 3.159(c)(4) (2015). 

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Service Connection

In this case, the Veteran has claimed entitlement to service connection for an acquired psychiatric disorder to include PTSD (based on stressors experienced during his period of active service). Specifically, he contends that he was in fear of his life during Desert Storm, as he had no gas mask protection, and he was aware that his unit could be attacked at any moment with chemical weapons. An additional stressor described of the memory of seeing the body of a blood-soaked fellow soldier. 

To that end, the United States Court of Appeals for Veterans Claims (Court) held that, in order to prevail on the issue of service connection on the merits, there must be medical evidence of (1) a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. See generally Hickson v. West, 12 Vet. App. 247, 253 (1999).

Service connection for PTSD specifically requires: (1) a current medical diagnosis of PTSD, (2) credible supporting evidence that the claimed in-service stressor actually occurred, and (3) medical evidence establishing a nexus between the claimed in-service stressor and the current symptomatology of PTSD. See 38 C.F.R. § 3.304(f) (2015); see also Cohen v. Brown, 10 Vet. App. 128, 138 (1997), and Pentecost v. Principi, 16 Vet. App. 124, 129 (2002). Prior to July 13, 2010, a claimed non-combat stressor was required to be verified, and it was determined that the evidence of record, including the Veteran's uncorroborated assertions, was insufficient to verify a non-combat stressor. See Cohen; see also Dizoglio v. Brown, 9 Vet. App. 163, 166 (1996).

Effective July 13, 2010, 38 C.F.R. §3.304(f) was amended to add a new paragraph, §3.304(f)(3), which reads as follows:

If a stressor claimed by a veteran is related to the Veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of [PTSD] and that the Veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the Veteran's service, the Veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. For purposes of this paragraph, "fear of hostile military or terrorist activity" means that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the Veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the Veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror.

As such, the Veteran's claim will be viewed in light of the amended language of the regulation. Importantly, this amendment does not require verification of combat service, nor does it require a verification of any claimed stressor. Instead, the claimed stressor must simply be consistent with the circumstances of the Veteran's service (in the absence of clear and convincing evidence to the contrary), and, as noted, the Veteran's lay testimony alone may be sufficient establish the occurrence of the claimed in-service stressor. 

Given that the record shows the Veteran served in Desert Storm and considering the circumstances of that service, the Board will accept the Veteran's claimed stressor related to the fear of hostile attack. 

Turning to the evidence of record, in October 1997, a Board decision denied service connection for major depression. The Board determined that depression was first diagnosed several years after his period of service, and that the diagnosis had not been medically-associated with the Veteran's period of active duty. 

The evidence considered at that time included the Veteran's service medical records, which did not show treatments or complaints of a psychiatric nature. Post-service, May 1994 VA hospitalization records noted that the Veteran complained of job-related anxiety complaints over the previous ten months. Depression was diagnosed. 

A VA psychiatric examination in September 1994 diagnosed major depression, single episode, moderate. The Veteran's history reflected job-related problems, although he attributed his psychiatric problems to his service during Desert Storm. The examiner made no finding that the diagnosis was related to the Veteran's periods of service. 

In June 1998, the Veteran filed an application to reopen his claim for service connection. While additional records demonstrated current diagnoses of a depressive disorder and anxiety, these records do not contain a medical opinion to address the etiology of any diagnosed psychiatric disorder.

In an October 2006 remand, the RO was asked to obtain a detailed description of any claimed PTSD stressors from the Veteran, and to verify any identified stressors and schedule the Veteran for a PTSD VA examination. In November 2006, the Veteran submitted a stressor statement in which he described stressors to include the fear of hostile activity while he was serving in Desert Storm, as noted in detail above, as well as the sight of the body of a blood-soaked soldier. 

In January 2013, the Board remanded the Veteran's claim to afford the Veteran a VA examination to determine the nature and etiology of any psychiatric disorder. The Veteran was afforded a VA examination in February 2013. The examiner was asked to provide diagnoses for any currently-manifested psychiatric disorder(s). The examiner opined that the Veteran did not meet the criteria for a current psychiatric disorder, but he had a history of depression in 2004. Although the Veteran was not diagnosed with a current psychiatric disorder, the Board noted in a subsequent May 2013 remand that evidence of record suggested that he had been treated for psychiatric problems earlier in the appellate period. As such, the Board found that a remand was necessary to obtain a supplemental opinion with respect to the Veteran's claim of entitlement to service connection for an acquired psychiatric disorder.

A July 2013 VA opinion indicated that the Veteran was initially seen in mental health for "burnout," but that he denied depression. He was seen for depression in April 2000; for anxiety, depression, and anger in May 2000; job stress in July 2000; group therapy in July and August 2000 (due to the unfairness of the military and large organizations); job frustration in September 2000; to request a diagnosis of PTSD (that was not provided because no symptoms were found consistent with that diagnosis) in August 2001; job-related stress in April 2002 in which the Veteran denied depression; stress related to Desert Storm in September 2002; requesting referral to a PTSD program in October 2002 in which he noted one of his stressors (gas mask ripping off when his tent caught fire); generalized anxiety disorder and PTSD in 2003 (though it was noted in May 2003 that the Veteran never actually carried a diagnosis of PTSD, and that he was "clearly attempting to gain a diagnosis"); PTSD groups in June 2003 because "the government sucks." He reported with anxiety in 2004, and depression screens in 2007, 2008, 2010, and 2011 were negative.

Following this review, the examiner determined that the etiology of the Veteran's depression was more likely than not related to job stress. In support, she noted that the Veteran's first mention of stress from Desert Storm was in September 2002, and notes from that time through 2004 indicated that the Veteran was attempting to obtain a PTSD diagnosis. She further stated that the Veteran was placed in PTSD programming despite documentation that PTSD symptoms never met diagnostic criteria, and that records from 2005 to the present indicated repeated denials of depressive or PTSD symptomatology.

Finding that the Veteran's conceded Desert Storm stressor was not discussed, the Board again remanded the claim for an additional VA examination in September 2014. In November 2014, a VA examiner diagnosed the Veteran with a personality disorder (mixed personality features) following a review of the record and an in-depth interview. In a January 2015 addendum, it was noted that personality disorders typically begin in adolescence or early adulthood, and that there was no indication that the Veteran's military service caused, exacerbated, or contributed to the development of a personality disorder.

An additional addendum opinion, dated in March 2015, indicated that aside from a personality disorder, there was no evidence of a mental health condition related to military service, and that there was no evidence as to an aggravation of any preexisting condition. The Board notes that personality disorders are not diseases or injuries under VA regulations and therefore are not disabilities for which service connection can be granted. 38 C.F.R. § 3.303(c) (2015). While service connection may be granted if the evidence shows that an acquired psychiatric disorder was incurred or aggravated in service and superimposed upon the preexisting personality disorder, no such finding has been made in this case. 38 C.F.R. §§ 4.9; 4.125(a), 4.127 (2013); Carpenter v. Brown , 8 Vet. App, 240 (1995).
Importantly, the Board notes that neither PTSD nor depression was diagnosed, and reiterates that the Veteran has denied such symptomatology to VA providers for several years. As such, the lengthy record in this case fails to demonstrate one instance in which a medical professional has diagnosed the Veteran with a psychiatric disorder related to the Veteran's periods of active service. While the Board noted that the Veteran's Desert Storm stressor would support a grant of service connection if PTSD were diagnosed, there is simply no evidence of any such diagnosis.
Turning to lay evidence now of record, to include the Veteran's repeated assertions that he carries a current psychiatric diagnosis which is ultimately related to his periods of active service, in Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007), the Federal Circuit determined that lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition (noting that sometimes the layperson will be competent to identify the condition where the condition is simple, for example difficulty hearing, and sometimes not, for example, a form of cancer), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. The relevance of lay evidence is not limited to the third situation, but extends to the first two as well. Whether lay evidence is competent and sufficient in a particular case is a factual issue.

Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. Here, the Veteran is not providing statements related to the diagnosis of a simple disorder, or about symptomatology, but is instead rendering an opinion regarding a psychiatric diagnosis (and its relationship to known events in service). However, a mental disability is not a condition capable of lay diagnosis, nor is it the type of condition that can be causally-related to military service without medical expertise. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. Sept. 14, 2009); Jandreau, 492 F.3d 1372, 1377. The etiology of a psychiatric disease is a matter of medical complexity. The Veteran is a layperson and does not cite to any supporting medical opinion or treatise evidence in support of his statements. As such, his opinions in this matter have little probative value.
Importantly, there is simply no probative evidence of record to demonstrate a medical link between a claimed psychiatric disorder and the Veteran's period of active service. Again, the Board notes that the Veteran's service treatment reports are silent for a diagnosis of any such disorder. As the Veteran's personality disorder is not a compensable disability, and because an acquired psychiatric disorder is not shown to be related to the Veteran's periods of active service, the preponderance of the evidence is against the Veteran's claim of service connection for a psychiatric disorder, and the appeal must be denied. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of-the-doubt rule as required by law and VA regulations. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 

 Entitlement to TDIU

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities be rated totally disabled. 38 C.F.R. § 4.16. A finding of total disability is appropriate "when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. §§ 3.340(a)(1), 4.15.

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities provided that if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. For the purpose of one 60 percent or one 40 percent disability in combination, disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. § 4.16(a).

In determining whether unemployability exists, consideration may be given to the Veteran's level of education, special training and previous work experience, but not to his age or to any impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

In this instance, service connection has been established for four disabilities: sinusitis evaluated as 10 percent disabling; and bilateral tinea pedis, a left knee cystic mass, and left ear hearing loss, all non-compensably rated. His combined evaluation is 10 percent. Although the Veteran's service-connected disabilities do not meet the threshold percentage requirement to establish eligibility for TDIU pursuant to 38 C.F.R. § 4.16(a), it must still be determined whether his service-connected disabilities preclude him from engaging in substantially gainful employment on an extra-schedular basis. See 38 C.F.R. § 4.16(b). 

Under this regulation, Veterans who are unable to secure gainful employment by reason of service-connected disabilities, but fail to meet the criteria in 38 C.F.R. § 4.16(a), may receive extraschedular consideration under 38 C.F.R. § 4.16(b). Specifically, rating boards should submit to the Director, Compensation and Pension Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a). The rating board will include a full statement as the Veteran's service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue. See 38 C.F.R. § 4.16(b). 

In order to grant TDIU in this case, the record must reflect that circumstances, apart from non-service-connected conditions, place the Veteran in a different position than other veterans having the same compensation rating. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. The ultimate question is whether the Veteran, in light of his service-connected disabilities, is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). 

In Moore v. Derwinski, 1 Vet. App. 356, 359 (1991), the Court discussed the meaning of "substantially gainful employment," in part, by noting the following standard announced by the United States Court of Appeals in Timmerman v. Weinberger, 510 F.2d 439, 442 (8th Cir. 1975): 

It is clear that the claimant need not be a total "basket case" before the courts find that there is an inability to engage in substantial gainful activity. The question must be looked at in a practical manner, and mere theoretical ability to engage in substantial gainful employment is not a sufficient basis to deny benefits. The test is whether a particular job is realistically within the physical and mental capabilities of the claimant. Id. 
 
A veteran's service-connected disabilities, alone, must be sufficiently severe to produce unemployability. Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the Veteran. Reasonable doubt is one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102 (2015). 

Applicable regulations place responsibility for the ultimate total disability rating based on individual unemployability determination on VA, not a medical examiner. Accordingly, it is now clear that the ultimate issue of whether total disability rating based on individual unemployability should be awarded is not a medical issue, but is a determination for the adjudicator. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). 

In this case, the Veteran contends that "if you have difficulties breathing, difficulties hearing, suffering from PTSD symptoms, unable to sleep properly, its [sic] difficult to maintain a job if you are fortunate to get a job at 52 years old." See VA Form 9, July 2005. The Board notes that, of this list, the Veteran is only service connected for hearing loss, at a non-compensable rate. He is not service connected for a respiratory condition, PTSD, or a sleep disorder. 

The Veteran completed VA Form 21-8940 (Application for Increased Compensation Based on Unemployability), on several occasions, to include May 2003 (twice) and May 2004. He indicated that his service-connected disabilities affected his full-time employment beginning in 2002, and that he last worked full-time in May 2002. Despite that claim, he noted that his last full-time occupation ended in March 2003 at Remington Arms, and that his last employment ended in June 2003 at Pinnacle Pointe Hospital. He completed electronic/avionic training at the University of Central Arkansas, and also attended Capital City Junior College studying ratio and television broadcasting management.

Here, the Board has reviewed the voluminous record. Repeated treatment for his service-connected disorders (sinusitis, skin, a cystic mass on the knee, and hearing loss) was noted repeatedly throughout the record. However, these reports to not demonstrate that any service-connected disability is more severe than contemplated by the rating schedule, or that any service-connected disability (or the combination thereof) prevented the Veteran from securing or maintaining substantially-gainful employment. Instead, and per the Veteran's own statements, it would appear that other non-service-connected disorders, most notably a personality disorder, hinder the Veteran's occupational opportunities.

In recognition of the severity of and impairment caused by his service-connected disabilities, the Veteran is currently-rated as a combined 10 percent. However, based on the evidence discussed above, the Board finds that a preponderance of the evidence is against the conclusion that it is at least as likely as not (50 percent or greater) that the Veteran's service-connected disabilities alone preclude, or have precluded at any time during the course of his appeal, the Veteran from engaging in substantially-gainful employment. Indeed, the Board acknowledges that the Veteran's disabilities may impede his performance in some capacity. In fact, that is the reason service connection has been granted. However, there is no probative evidence of record to show that service-connected disabilities along prevent substantially-gainful employment. 

The Board acknowledges the Veteran's assertions that he is unable to work due to his service-connected disabilities, and must analyze the competency, credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir.1996) (table); Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). 

In this case, the Veteran is competent to report symptoms such as hearing difficulty, because this requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. 465, 470 (1994). Although these statements are competent, they are nonetheless inconsistent with the most probative evidence of record, which does not show the Veteran is unemployable solely due to his service-connected disabilities. 

Additionally, the Board finds that the record does not present any unusual factors, such as frequent periods of hospitalization or marked interference with employment, which might serve as a predicate for a finding of unemployability. 

The Veteran's service-connected disabilities have not been, in the Board's determination, so severely-disabling as to have rendered him or the average person similarly situated unable to secure or follow substantially gainful employment, nor does the medical evidence of record reflect that any of his service-connected conditions would render him individually unable to follow any substantially gainful occupation. As such, referral for extra-schedular consideration for a TDIU pursuant to 38 C.F.R. § 4.16(b) is not warranted.

While the Board remains sympathetic to the Veteran, and regrets his current condition, unfortunately the claim for entitlement to a TDIU rating must be denied. In arriving at the decision to deny the claim, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert. As such, the appeal is denied.


ORDER

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder, is denied. 

Entitlement to a total disability rating based on individual unemployability due to service connected disabilities is denied.




____________________________________________
MATTHEW W. BLACKWELDER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs